KING, Judge.
This appeal presents the issue of whether or not the trial court correctly applied the defense of assumption of the risk to deny plaintiff recovery on his claim.[1]
Donald Dailey (hereinafter referred to as plaintiff) seeks damages for injuries suffered when he was struck in the leg by a fence wire cut by a bushhog being operated by Kearney LeBlanc on John Douget’s property. Plaintiff sues Kearney LeBlanc, the operator of the bushhog, John Douget, the property owner and LeBlanc’s employer, and A1 Lavergne and Carol Roch, the adjacent property owners (hereinafter referred to as defendants). From a trial court judgment dismissing his claim against defendants the plaintiff appeals. Finding that the trial court was not manifestly in error in applying the defense of assumption of the risk to the facts of this case, we affirm.
FACTS
Donald Dailey, an employee of Dailey Fence Company, was hired by John Douget (hereinafter referred to Douget) to construct a fence on Douget’s property. One week prior to installing the fence, plaintiff went onto Douget’s property and asked Douget to have the grass cut to enable him to install the fence. While plaintiff was walking the old fence line on Douget’s property, near where the new fence was to be erected, he noticed some coiled wire lying on the ground and coming from a fence post on the adjacent property. A1 Lavergne and Carol Roch, who owned the property next to Douget’s, had been in the process of installing their own fence near Douget’s proposed new fence. Lavergne had taken some excess wire from his fence and stapled it to a corner post of his fence and coiled and left the remainder of the wire lying on the ground in the high grass on Douget’s property. „
On June 28, 1979, plaintiff began constructing the fence on Douget’s property. At the same time, Kearney LeBlanc, at Douget’s request, was cutting the grass on Douget’s property with a bushhog. Since Douget was blind and unable to see, he asked plaintiff to show LeBlanc where to cut the grass. The grass was about three feet tall at that time. Plaintiff showed LeBlanc where to cut the grass but did not tell LeBlanc about the fence wire plaintiff knew was lying hidden in the high grass.
As LeBlanc was cutting the grass near the posts of the fence, the bushhog caught the coiled wire, which was lying on the ground, and broke it, causing the wire to strike plaintiff in the leg. The plaintiff was standing approximately 15 feet behind the bushhog when he was hit by the wire. LeBlanc had actually twice driven across the wire with the bushhog while cutting the grass, before the accident occurred.
As a result of the accident plaintiff sustained injuries to his leg for which he claims defendants are liable to him in solido for damages. Plaintiff filed suit against defendants, seeking recovery for medical expenses, physical and mental injuries, and loss of earning capacity.
Trial on the merits was held before the trial court, which granted a directed verdict in favor of defendants and dismissed plaintiff’s suit. The trial court found that plaintiff assumed the risk by knowingly exposing himself to danger where he knew the risks involved.
Plaintiff timely appeals, alleging that the trial court erred in applying the defense of assumption of the risk to the facts of the case and granting a directed verdict dismissing his suit.
*1046 LAW
Louisiana recognizes assumption of risk as an affirmative defense to tort liability. Arnold, v. Union Oil of California, 608 F.2d 575 (5⅛ Cir.1979). In order to assume a risk, one must knowingly and voluntarily encounter a risk which caused him harm and must understand and appreciate the risk involved and accept it as well as the inherent possibility of danger because of the risk. Rozell v. Louisiana Animal Breeders Cooperative, Inc., et al, 496 So.2d 275 (La.1986); Lytell v. Hush-field, 408 So.2d 1344 (La.1982); Dorry v. Lafleur, 399 So.2d 559 (La.1981); Varnado v. Sanders, 477 So.2d 1205 (La.App. 1 Cir. 1985), writ den., 481 So.2d 630 (La.1986). Under the theory of assumption of risk, before the adoption of comparative negligence in Louisiana, recovery was denied if the plaintiff knew or should have known of the risk involved, appreciated the risk, and voluntarily exposed himself to the risk. Prestenbach v. Sentry Ins. Co., 340 So.2d 1331 (La.1976). The determination of whether a plaintiff assumed a risk is made by subjective inquiry. Rozell v. Louisiana Animal Breeders Cooperative, Inc., et al, supra; Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971). Thus, it is appropriate to examine the record to determine if the plaintiff appreciated the unreasonable character of the risk of which he was aware. The critical inquiry is whether or not the plaintiff was exercising ordinary care for his own safety at the time of the accident and whether or not he was aware of the presence of the wire and the danger posed by operation of a bushhog near the wire.
In this case, the plaintiff admitted he knew that the wire was present and hidden in the high grass in the vicinity of where LeBlanc was cutting the grass with a bush-hog. Plaintiff admitted he had noticed the wire as he walked the property the week before the accident. Plaintiff testified as to his knowledge of the wire and what he told LeBlanc about the wire as follows:
“Q. When you walked that fence line, that you say you don’t remember now, do you recall seeing cable coming from that corner post, and the corner post I’m talking about is the corner post on the Lavergne property, a cable coming down and seeing some cable on the ground?
A. I saw some cable on the comer post, on the corner post right there.
Q. So when you dug the corner post, that was before Mr. Leblanc ever started cutting, you knew that there was cable coming from the Lavergne property coming down the corner post, and you saw that cable on the ground; isn’t that a fact?
A. At the base of the corner post.
Q. Did you check to see how far that cable went?
A. It was coiled up right there.
Q. Did you check to see if it went onto Mr. Dougat’s [sic] property?
A. I did not.
******
Q. Did you tell Mr. Leblanc, did you warn Mr. Leblanc that there was a piece of cable that you had seen coming down from that corner post and coiled on the ground?
A. No.
Q. But you knew it was there?
A. I knew it was by the comer post.
Q. And you never checked to see how far it went?
A. I have no idea.
Q. And you didn’t check to see if he was going to be mowing over that cable?
A. No.
Q. You didn’t tell anybody that you had seen that cable coming off of that corner post down to the ground, coiled up, and you don’t know how far it went because the grass was high, wasn’t it?
A. Correct.
Q. And you couldn’t see the cable, could you? You couldn’t see if it went anywhere, could you?
A. No.
Q. And you didn’t check, did you?
A. No.
Q. And you didn’t tell anybody, did you?
*1047 A. No.
Q. The part where Mr. Leblanc ran over the cable was on Mr. Dougat’s [sic] property, wasn’t it?
A. Right.
Q. And in spite of the fact that you had seen that cable coming down the post, you had seen it coiled, you were standing where he was mowing, close to where he was mowing; is that correct?
A. He had already mowed there, where I was standing.
Q. And you never told him a word, ‘Watch out for the cable,’ or anything like that? You never warned him, did you?
A. No.
Q. But you knew the cable, because you had seen it coming down, right?
A. Right.”
Thus we find that on the day of the accident plaintiff did not forget and did know that the cable was in the grass in the area near where the bushhog was being operated.
Plaintiff seeks to compare his situation with that of the plaintiff in Soileau v. South Cent. Bell Tel. Co., 406 So.2d 182 (La.1981), in which the jury found that the plaintiff was not contributorily negligent where he tripped over a telephone wire which he had forgotten about until he became entangled. The present case can be distinguished since the plaintiff in the Soi-leau case had not encountered the wire for two months before the accident, which occurred at night, and had forgotten about the wire, while the plaintiff in this case noticed the wire only a week prior to the accident, which occurred during the day, and had not forgotten about the wire. This case also involved operation near the wire of a bushhog that plaintiff admitted he knew could throw or sling objects lying on the ground and where the bushhog operator did not know about the wire, which facts were not present in the Soileau case.
Where a person goes into a zone of danger and is injured by one of the risks about which he has full knowledge, he has assumed the risk of that danger and cannot recover. Dallas v. Crescent Forwarding and Transp. Co., 18 So.2d 113 (La.App.Orl. Cir.1943). In this case, plaintiff admitted that he was familiar with bushhogging operations and was aware that the bushhog had a tendency to throw things lying on the ground which could create a danger to those standing near. In spite of this knowledge, plaintiff stood only ten to twelve feet from the bushhog as it passed where he knew there was a coiled wire, lying on the ground and hidden in the high grass, which could be cut or thrown by the bushhog.
In a similar case involving a plaintiff who was injured by an object thrown by a bush-hog as he stood 45 feet away, Aguillard v. Langlois, 471 So.2d 1011 (La.App. 1 Cir.1985), writ den., 476 So.2d 356 (La.1985), the court found that the plaintiff assumed the risk of his injuries, reasoning as follows:
“It is evident from his testimony that plaintiff knew that there was a possibility the bushhog would throw a projectile; from his long acquaintance with bush-hogs, he appreciated the risk of injury from being struck by one of the projectiles, yet by standing 45 feet away while facing the bushhog he voluntarily encountered the risk, however slight, that it might hurl an object to him. Thus, we find that plaintiff assumed the risk of his injury under the traditional ‘Assumption of the Risk’ analysis set out by our Supreme Court in Dorry v. Lafleur, 399 So.2d 559, 562-63 (La.1981).” Aguillard v. Langlois, 471 So.2d 1011, at page 1015 (La.App. 1 Cir.1985).
It is evident from subjective inquiry, made by reviewing the evidence in the record, that the plaintiff in this case was aware of the possibility that he could be struck by an object lying on the ground which could be thrown by the bushhog, especially where he stood only 10 to 15 feet away, and where he knew there was a coiled wire lying on the ground which could be struck or thrown by the bushhog and voluntarily encountered this risk. As the *1048 trial judge stated in his oral reasons for judgment:
“The Court finds that the plaintiff, Mr. Dailey, is an experienced builder of fences. In fact, he now owns his own company. At the time, though, he was experienced. He knew the risks involved. He knew the area had to be bush hogged. He understood bush hogging. He testified that there are two types of bush hogs, those that cut five feet (5') and those that cut six feet (6'). That’s no small smount [sic] of knowledge. He knew that bush hogs tend to throw objects. He knew there was a wire present. He says it was coiled at the base of the post on the Lavergne property, but by his testimony, the post that he put in was only eight (8") to nine inches (9") away. Perhaps the coil’s not eight (8") to nine inches (9"), but I really can’t give that a great deal of weight. He knew the danger, he exposed himself to the danger, he is guilty of assumption of risk.”
The trial judge has much discretion in determining whether a motion for dismissal should be granted. Mott v. Babin Motors, Inc., 451 So.2d 632 (La.App. 3 Cir.1984). After reviewing the record we cannot say that the trial judge was manifestly in error or clearly wrong in his finding of fact that plaintiff was not exercising ordinary care for his own safety by standing near where the bushhog was being operated in close proximity to a wire that he knew was lying on the ground and thereby assumed the risk of his injuries. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
For the foregoing reasons, we affirm the judgment of the trial court dismissing plaintiff’s suit at his cost. All costs of this appeal are taxed to the plaintiff-appellant.
AFFIRMED.

. The accident sued on occurred on June 28, 1979 before comparative negligence was enacted into law in Louisiana.